STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
SUPREME COURT

| | | |
|---|---|---|
| STATE OF RHODE ISLAND | : | |
| | : | |
| VS. | : | SU-06-0234 |
| | : | (PM-2000-5482) |
| JOHN F. PIERCE | : | (P1-1992-3304A) |

---

ON THE APPEAL
OF THE PROVIDENCE SUPERIOR COURT'S PARTIAL DENIAL
OF PETITIONER'S PETITION FOR POST CONVICTION RELIEF FOR
P1/92-3304A

---

**BRIEF OF PETITIONER**
**JOHN F. PIERCE**

RICHARD K. CORLEY (#2965)
CORLEY TAVERAS, LLP
127 Dorrance Street, 2nd Floor
Providence, RI 02903
(401) 861-2100 Tel.
(401) 861-2139 Fax.
rkcorley@ctpllp.com

## TABLE OF CONTENTS

Table of Authorities..........ii

Statement of the Case..........2

Arguments

I. THIS COURT SHOULD REVERSE THE PETITIONER'S CONVICTIONS WITH RESPECT TO COUNTS 1 AND 7 OF THE INDICTMENT BECAUSE THE DUPLICITOUS NATURE OF THE INDICTMENT DENIED PETITIONER HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND A UNANIMOUS JURY VERDICT UNDER THE DUE PROCESS CLAUSE OF THE 5th AND 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I §10 OF THE RHODE ISLAND CONSTITUTION..........4

A. Petitioner's Constitutional right to a fair trial under the Due Process Clause was violated because the duplicitous nature of Counts 1 and 7 of the indictment denied petitioner his right to notice of the charges brought against Petitioner..........5

B. The duplicitous nature of Counts 1 and 7 of the indictment denied Petitioner his Constitutional right to a unanimous jury verdict under the Due Process Clause..........7

C. Petitioner's trial counsel's failure to file a motion to dismiss Counts 1 and 7 of the indictment on grounds of duplicity rendered trial counsel's assistance in the defense of petitioner ineffective..........15

II. THIS COURT SHOULD UPHOLD THE SUPERIOR COURT'S DECISION GRANTING PETITIONER'S POST-CONVICTION RELIEF APPLICATION WITH REGARDS TO COUNTS 3, 4, AND 5 OF THE INDICTMENT BECAUSE A PORTION OF THE INSTRUCTION GIVEN TO THE JURY IMPROPERLY REMOVED THE ELEMENT OF FORCE AND COERCION AND DENIED THE PETITIONER HIS DUE PROCESS RIGHTS OF FUNDAMENTAL FAIRNESS WHICH REQUIRES EACH ELEMENT OF A CRIME BE PROVEN BEYOND A REASONABLE DOUBT..........17

Conclusion..........22

# TABLE OF AUTHORITIES

## CASES

Heath v. Vose, 747 A.2d 475, 479 (R.I. 2000)........15,16

In Re Winship, 397 U.S. 358, 362 (1970)........18,19

Pailin v. Vose, 603 A.2d 738 (R.I. 1992)........21

Pierce v. Wall, No. 00-5482, 2005 R.I. Super. LEXIS 3........*passim*

Sandstrom v. Montana, 442 U.S. 510 (1979)........20

State v. Brown, 619 A.2d 828, 832 (R.I. 1993)........7

State v. Christopher, 700 F.2d 1253, 1257 (9th Cir. 1983)........6

State v. LaPlante, 409 A.2d 130 (R.I. 1979)........16

State v. McGehearty, 394 A.2d 1348, 1352 (R.I. 1978)........20

State v. Saluter, 715 A. 2d 1250, 1253 (R.I. 1998)........*passim*

State v. Silva, 798 A.2d 419, 426 (R.I. 2002)........7

State v. St. Amant, 536 A.2d 897, 900 (R.I. 1988)........17,18

State v. Thomas, 794 A.2d 990, 993 (R.I. 2002)........4,17

Strickland v. Washington, 466 U.S. 668, 686 (1984)........15

Sullivan v. Louisiana, 500 U.S. 275 (1993)........19

United States v. Gipson, 553 F.3d 453, 456-59 (5th Cir. 1977), 478 U.S. 675 (1986)........5

United States v. Murray, 618 F.2d 892, 896 (2nd Cir. 1980)........5,6,7

United States v. Shetty, 76 Fed. Appx. 842, 844 (9th Cir. 2003)........14

United States v. UCO Oil Co., 546 F.2d 833, 835 (9th Cir. 1976)........5

Walker v. State of Indiana, 769 N.E. 2d 1162, 1167 (Ind. Ct. App. 2002)........15

## STATUTES

R.I. Const. Art. I, § 10 .......... 4,5,6,7

R.I. Gen. Laws § 11-37-2 .......... 2,17,18

R.I. Gen. Laws § 11-37-3 .......... 2,17,18

R.I. Gen. Laws § 11-37-4 .......... 2,17

R.I. Gen. Laws § 11-37-5 .......... 2,17

R.I. Gen. Laws § 11-37-8.1 .......... 2

R.I. Gen. Laws § 11-37-8.2 .......... 2

## RULES

R.I. R. Evid. 404(b) .......... 13,14

Super. R. Crim. P. 12(b)(2) .......... 15,16

Super. R. Crim. P. 35 .......... 3

Super. R. Crim. P. 48(a) .......... 2

Super.Ct.R.Prac. 2.3 .......... 3

## CONSTITUTION

U.S. Const. Amend. XIV, §1 .......... 4,5,6,7

U.S. Const. Amend. V .......... 4,5,6,7

## REFERENCE

United States v. Gipson: Duplicity Denies Right to Unanimous Verdict, 1978 Det.C.L.Rev. 319 .......... 5

## STATEMENT OF THE CASE

The Petitioner, John Pierce, was arrested and charged with seven separate Counts. Counts 1, 2 and 7 of the indictment charged Pierce with first-degree child molestation in violation of Rhode Island General Laws, Sections 11-37-8.1 and 11-37-8.2. Counts 3, 4, and 6 of the indictment charged Pierce with first degree sexual assault in violation of Rhode Island General Laws, Section 11-37-2 and 11-37-3. Count 5 charged Pierce with second-degree sexual assault in violation of Rhode Island General Laws, Sections 11-37-4 and 11-37-5.

The case was originally set for trial in Providence County before Justice Needham. However, Justice Needham recused himself and the case was reassigned to Justice Bourcier for trial. The first two trials were each declared to be mistrials. On April 12-20, 1994, a third trial was heard before Justice Bourcier and a jury, where the Court entered a judgment of acquittal as to Count 6 of the indictment. The jury convicted Pierce on the remaining six Counts. On July 1, 1994, Pierce was sentenced by Justice Bourcier. John Pierce was sentenced to thirty years to serve on Counts 1, 2, 3, and 7; ten years to serve on Count 4; and three years to serve on Count 5, all sentences running consecutive to one another, for a total of 133 years to serve.

Pierce appealed his conviction to the Rhode Island Supreme Court. On January 24, 1997, this Court affirmed Pierce's conviction as to five of the six Counts. However, with regards to Count 2 of the indictment, the Court reversed and vacated the conviction and remanded the case back to the Superior Court for trial. Upon remand, the State dismissed Count 2 pursuant to Rule 48(a) of the Rhode Island Rules of Criminal Procedure. As a result of the dismissal, Pierce's remaining sentence was a total of 103 years.

Pursuant to Rule 35 of the Rules of Criminal Procedure, Pierce timely moved for a reduction of his sentence. Because Justice Bourcier was no longer on the Superior Court, the Motion for Reduction of Sentence was heard by Superior Court Justice Pfeiffer who granted the Motion and sentenced Pierce to 30 years to serve concurrently on each count.

Pierce then filed a pro se Petition for post conviction relief. However, after several initial proceedings, the Superior Court advised Pierce that he could obtain counsel. As a result, his former trial co-counsel, Attorney Van L. Hayhow, Esq. was retained. On behalf of the Petitioner, Attorney Hayhow filed an Amended Application for Post Conviction Relief. The Amended Application for Post Conviction Relief addressed the duplicitous nature of the Counts 1 and 7 of the indictment. He also raised the Constitutionality of the charge given to the jury which withdrew from them the consideration of each and every element of the crime of Sexual Assault in regards to Counts 3, 4, and 5.

Justice Fortunato presided over the Petition for post conviction relief pursuant to Rule 2.3 of the Superior Court Rules of Practice. Justice Fortunato granted the post-conviction relief application with regards to Counts 3, 4, and 5. However, Justice Fortunato denied the application with regards to Counts 1 and 7. Petitioner filed a timely appeal of Justice Fortunato's decision with respect to Counts 1 and 7. The State filed a cross-appeal of Justice Fortunato's decision with respect to Counts 3, 4, and 5.

## ARGUMENT

### I. THIS COURT SHOULD REVERSE AND DISMISS PETITIONER'S CONVICTIONS WITH RESPECT TO COUNTS 1 AND 7 OF THE INDICTMENT BECAUSE THE DUPLICITOUS NATURE OF THE INDICTMENT DENIED PETITIONER HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND A UNANIMOUS JURY VERDICT UNDER THE DUE PROCESS CLAUSE OF THE 5th AND 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I §10 OF THE RHODE ISLAND CONSTITUTION

On appeal, the reviewing court will not disturb a trial justice's findings on an application for post-conviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence. State v. Thomas, 794 A.2d 990, 993 (R.I. 2002). "However, questions of fact concerning whether a defendant's constitutional rights have been infringed, and mixed questions of law and fact with constitutional implications, are reviewed de novo." Id. Finally, findings of historical fact, and inferences drawn from those facts, will still be accorded great deference by the reviewing court, even when a de novo standard is applied to the issues of constitutional dimension. Id.

This Court should reverse and dismiss Petitioner's convictions with respect to Counts 1 and 7 of the indictment because the duplicitous nature of the indictment, which referred to a general pattern of conduct rather than to a specific act alleged by the witness for each Count, denied Petitioner his Constitutional right to a fair trial and a unanimous jury verdict under the Due Process Clause of the 5th and 14th Amendment to the United States Constitution and Art. I §10 of the Rhode Island Constitution. The Supreme Court in Rhode Island defines duplicity in the criminal context "as the joining in a single count of two or more distinct and separate offenses." State v. Saluter, 715 A. 2d 1250, 1253 (R.I. 1998). "If an indictment is duplicitous, a general verdict of guilty will not reveal

whether the jury found defendant guilty of only one crime and not the other, or guilty of both." Id. "Thus, the prohibition of duplicity is said to implicate a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution." See, United States v. UCO Oil Co., 546 F.2d 833, 835 (9th Cir. 1976), cert. denied, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed. 2d 357 (1977); cf. United States v. Gipson, 553 F.3d 453, 456-59 (5th Cir. 1977); See generally, Comment, United States v. Gipson: Duplicity Denies Right to Unanimous Verdict, 1978 Det.C.L.Rev. 319; 8 Moore, supra, at 8-6 to -7, See also, United States v. Murray, 618 F.2d 892, 896 (2nd Cir. 1980). Pierce's convictions on Counts 1 and 7 of the indictment should be reversed because the duplicitous indictment which refers to a general continuing pattern of conduct rather than to a specific act alleged by the witness, denied Pierce his Constitutional right to a fair trial and denied him a unanimous jury verdict.

A. Petitioner's Constitutional right to a fair trial under the Due Process Clause was violated because the duplicitous nature of Counts 1 and 7 of the indictment denied Petitioner his right to notice of the charges brought against Petitioner

This Court should reverse and dismiss Petitioner's convictions with on Counts 1 and 7 of the indictment because the Petitioner was denied his constitutional right to a fair trial and notice of the charges brought against petitioner given that the **duplicitous indictment** referred to a continuing specific pattern of conduct rather than to a specific act alleged by the witness. A duplicitous indictment implicates a defendant's rights to notice of the charges against him. Murray, 618 F.2d at 896.

Under the Due Process Clause of the 5th and 14th Amendment to the Constitution, and Art. I § 10 of the Rhode Island Constitution, a criminal defendant has a right to notice of the charges which were brought against the defendant. "A legally sufficient

indictment must state the elements of the offense charged with sufficient clarity to apprise a defendant of what to defend against." State v. Christopher, 700 F.2d 1253, 1257 (9th Cir. 1983)(The Court found that an indictment which did not specify time was legally sufficient because it set forth the elements of the offense charged and contained a statement of the facts that sufficiently informed the accused of the elements of the specific offense.) A duplicitous indictment which is not specific as to the elements of the offense charged implicates a defendant's rights to notice of the charges against him. See Murray, 618 F.2d at 896.

Here, the Petitioner's Constitutional rights under the Due Process Clause were violated because Counts 1 and 7 of the indictment did not refer to specific acts alleged by the witness. Count 1 of the indictment alleges that the Petitioner "on a day and dates between the 1st day of September, 1989, and the 30th day of June, 1990, the exact **days** and dates unknown to the Grand Jurors...did engage in cunnilingus..." (Emphasis added) (See Appendix, page 1). Count 7 of the indictment alleges that the Petitioner "on a day and dates between the 1st day of September 1989, and the 30th day of June 1990, the exact **days** and dates unknown to Grand Jurors... did engage in sexual penetration, to wit, digital penetration." (Emphasis added) (See Appendix, page 3). The wording of the indictment indicates that the Attorney General never informed the Grand Jury as to the precise charges in the indictment. Further, the Attorney General had no idea which specific acts it had charged in the indictment. Rather, the Attorney General chose to charge the petitioner with a pattern of conduct, not a specific act. See Saluter, 715 A.2d at 1256 (This Court rejected the argument that a continuing pattern of conduct would satisfy elements of the offense). As a result, Petitioner was denied his Constitutional

impossible to determine for which event each single juror found the defendant guilty. For example, one juror might believe the testimony that molestation occurred in the den before the September through Junes dates. Another juror might believe the testimony that it occurred in the bedroom. Therefore, there is no assurance that a unanimous jury verdict was reached.

The indictment against the Petitioner is duplicitous. Count 1 of the indictment alleges that the Petitioner "on a day and dates between the 1st day of September, 1989, and the 30th day of June, 1990, the exact **days** and dates unknown to the Grand Jurors...did engage in cunnilingus..." Count 7 of the indictment alleges that the Petitioner "on a day and dates between the 1st day of September 1989, and the 30th day of June 1990, the exact **days** and dates unknown to Grand Jurors...did engage in sexual penetration, to wit, digital penetration." (Emphasis added).[1] The wording of the

---

[1] In order to visualize the duplicity of the State's evidence, Appellant quotes from the following portions of the transcripts:

T.T. 47

Q How many different types of touching happened to you while you were in the seventh grade?
MR. MANN: Objection.
THE COURT: Overruled.
A He put his fingers in my vagina, he put his mouth on my vagina, put his penis in my vagina, and I would have to give him a hand job.
Q Which rooms in the house did these things happen in?
A In my bedroom, in the den and in the cellar.
Q Any other rooms?
A I remember things happening early on in the bathroom.
Q Now, was there ever a time when you were in the seventh grade that more than one thing happened on a particular day?
A Yes, there was.
Q And what things did you remember happening on a particular day?
A He would put his fingers in my vagina and then put his mouth on my vagina.

Q Those things would happen on the same day?
A Those things happened constantly.
Q Was there ever a time when those things would happen that he would have you touch him in any way?
A Yes. I would give him a hand job.
Q What's a hand job?

T.T. 48

A A hand job where I would put my hand around his penis and I would jerk until he came.
Q And where did those things happen?
A That happened in the den.

T.T. 67

Q Now, you testified about him touching you in that time period again from September, '89 till about the end of March, 1990, early April, 1990. About him putting his fingers inside your vagina. Is that a yes?
A Yes.
Q Which rooms did that happen in?
A That happened in my bedroom, that happened in the den.
Q And how would he put his fingers inside your vagina?
A He would take his finger, my pants would be down, and he would put it inside my vagina.
Q Did he always take your pants down?
A If I had pants on.
Q What other clothing had you worn when these things happened?
A Nightgowns.
Q Did you wear anything under your nightgowns?
A Sometimes underwear.
Q And he would take – how would he put his finger inside your vagina when you were wearing your nightgown?
A My nightgown would be up to about my waist and if I had underwear on, it would be off and he would take his finger and he'd put it inside my vagina.
Q Now, you also testified about him putting his mouth on your vagina in that time period?

T.T. 68

A Yes.
Q And again we're only going now from September of '89 until about April or the end of March of 1990?
A Yes.
Q Which rooms did that happen in?
A In the den.
Q Did that ever happen in your bedroom?

indictment indicates that the Attorney General never informed the Grand Jury as to the day of the precise charges in the indictment. Further, the Attorney General had no idea which specific acts it had charged in the indictment. Rather, the Attorney General chose to charge the petitioner with a pattern of conduct, not a specific act. As a result, the jury found the Petitioner guilty at trial based upon the cumulative effect of all the witness's allegations and not a single incident which is required by Saluter. Also, the jury based its decision on a single count in the Bill of Particulars which was issued twice.

In Saluter, this Court reversed convictions on all of the counts in that indictment which alleged "on a day and dates" during a specific time period a criminal act was committed.[2] Saluter, 715 A.2d at 1253. On the other hand, the Court upheld convictions where no evidence of any similar acts was presented to the jury because there was no risk of jury confusion as to the charged conduct. Id. Here, Petitioner's conviction should be reversed because testimony alleging evidence of similar acts occurring during the time period specified in the various Counts of the Indictment was presented at trial. As a result, the Petitioner received an unfair trial due to jury confusion and a lack of a unanimous jury verdict.

The testimony at trial describes vague summaries of alleged behavior on the part of the defendant rather than specific acts. There was little attempt by the prosecution, throughout the testimony, to try to isolate a specific act or day alleged in the indictment. The State failed to identify the specific act which constituted the charge. In order to have avoided the issue of duplicity, evidence of a single act on a single day that the jury can be

---

A It would lead up to something else, but that was later
on.

[2] The language is even more problematic in this indictment because it states "the exact **days** and dates unknown."

required to agree upon unanimously must be presented in the indictment. Here, there was no such indictment or evidence presented.

Testimony was presented of similar acts occurring between September 1, 1989 and June 30, 1990. During this time frame, the complaining witness was in the 7th Grade. On Page 47, Line 1, the complaining witness was asked, "How many different types of touching happened to you while you were in the seventh grade?" The witness answered by naming the different types of touching (digital penetration, cunnilingus, and penile penetration). (See Appendix page 7, lines 1-7) Penile penetration was not a charged count in the indictment. This testimony describes multiple incidents and does not set forth the specific allegations for which Count 1 and 7 are based upon.

In an attempt by the prosecutor to narrow the specific dates, the prosecutor asked, "Now was there a time when you were in the seventh grade that more than one thing happened on a particular day?" Answer: "Yes there was." Question: "And what type of things did you remember happening on a particular day?" Answer: He would put his fingers in my vagina and then put his mouth on my vagina." Question: "Those things would happen on the same day?" Answer: "Those things happened constantly." (See Appendix page 7, line 12-21). As a result, throughout the testimony, the complaining witness testified to repeated acts occurring within a time period without ever identifying a specific day and a specific act alleged in the indictment. Therefore, there was no specific act presented to the jury upon which it could unanimously agree.

In Count 7, Mr. Pierce was charged with one count of digital penetration on **days** or dates between September 1, 1989 and June 30, 1990. However, various acts of digital penetration were described at trial occurring between September 1989 and April 1990. First on page 47 of the trial transcript, the witness alleges that digital penetration occurred

in the bedroom, the den and in the cellar during the period of September 1, 1989 and April 1990. (See Appendix page 7, line 8-9). Based on this testimony it is unclear which instance of digital penetration is being charged in Count 7. Three separate acts cannot be joined in a single count.

Furthermore, on page 54 of the transcript, the prosecution inquires about "touchings" that occurred between September of 1989 and April of 1990 (the time period covered in Counts 1 and 7 of the indictment). The prosecution never specifically asks which specific type of "touchings" the witness was referring to, and further, these touchings relate to more than one event evidenced by the testimony that the touching occurred in both the den (See Appendix page 9, line 9) and the bedroom (See Appendix page 9, line 17). This is another failure by the prosecution to specify which specific act is being alleged in the Counts 1 and 7.

A specific episode is described which allegedly took place during the time period set forth in Counts 1 and 7 of the indictment. However, the incident described by the witness involved penile penetration. Penile penetration is not alleged in Counts 1 and 7 of the indictment. (See Appendix page 10, line 9). Although a specific act of penile penetration is described, the Prosecution failed to isolate a single act of cunnilingus and digital penetration. Therefore, it was impossible for the jury to agree unanimously upon a single act for Count 1 and 7.

Later in the testimony, the witness indicates that the Petitioner put his fingers inside of her vagina in both the bedroom and the den during the period of September 1989 until April 1990. (See Appendix page 11, lines 2-8). The witness was then asked "how many times did it happen in the den in that time period (September 1989 to March 1990)?" The witness then replied that she did not know the amount of times. As a result

the prosecution did not single out one specific act of digital penetration during this time period, but rather elicited vague responses from the witness giving rise to multiple events of digital penetration occurring during the specific time period.

To further evidence that the State did not single out a specific act of digital penetration occurring between September 1989 and March 1990, Petitioner submits the witness's testimony which describes different forms of clothing she could be wearing on separate occasions in which the digital penetration allegedly occurred. The witness testified that sometimes she would be wearing pants, sometimes a night gown and other times underwear. (See Appendix page 11, lines 9-23). The fact that the witness describes several different outfits of clothing indicates further that multiple events allegedly occurred during this time period, yet the State never specified which specific event is being alleged in Count 7.

During the trial, the judge gave a limiting instruction to the jury after the testimony of the complaining witness pursuant to Rule 404(b). The judge instructed the jury to not consider alleged acts outside of the time periods specified in the indictment as evidence of guilt. The Judge first sets out the time periods for each of the seven Counts that are alleged against the Petitioner without any reference to the specific allegations in each Count. (See Appendix page 13-14). The Judge further instructs the jury that "evidence of other bad acts outside of this time frame are only offered for the purpose of attempting to prove the defendant had a "lewd disposition, if any to commit such acts against the complaining witness." (See Appendix page 15, lines 19-21). Here, the judge instructs the jury what to do with the acts outside of each time period, but never instructs the jury what to do with the similar, and identical acts taking place within the specified

time period of each Count. Therefore, the judge's instruction does not contain any limiting instruction as to duplicity.

The judge negated the entire limiting instruction when he responded to a jury question during deliberations as to what time period should be considered. The judge answered, "...anything up to until the person turns 14 years of age is relevant with regard to the child molestation count." (See Appendix page 26, lines 3-5). This contradicts the judge's instructions to consider any testimony outside of the time period in each count solely for the purpose of determining any "lewd disposition, if any to commit such acts against the complaining witness." (See Appendix page 15, lines 19-21). As a result, the jury may not have agreed unanimously as to the Counts charged in the indictment and may have returned a verdict based on the 404(b) evidence of other bad acts.

At the end of all of the evidence, the Judge gave instructions to the jury. However, these instructions were inadequate to cure the duplicity problems in the indictment. "A jury instruction requiring unanimity as to which distinct crimes the defendant committed cures duplicity." United States v. Shetty, 76 Fed. Appx. 842, 844 (9th Cir. 2003). Here, the jury instructions given at the end of the trial were inadequate. The judge informed the jury that it must reach a unanimous decision as to whether the State had proved its case beyond a reasonable doubt for each individual Count (See Appendix page 19, lines 11-14). However, the judge failed to instruct the jury that it must unanimously agree to a **specific** act of cunnilingus and digital penetration occurring during the specified time frames. Therefore, because multiple alleged acts of each were presented at trial, there is no assurance that the jury unanimously agreed upon one specific act for each Count in the indictment. As a result, the Judge's instructions to the jury did not cure the duplicity problem.

C. Petitioner's trial counsel's failure to file a motion to dismiss Counts 1 and 7 of the indictment on grounds of duplicity rendered trial counsel's assistance in the defense of Petitioner ineffective

Petitioner received an unfair trial as a result of the trial counsel's failure to file a motion to dismiss with respect to Counts 1 and 7 of the indictment based upon grounds of duplicity.

To establish a claim of ineffective assistance of counsel, an appellant must demonstrate that (1) his trial counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) the deficiency in the trial counsel's performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 686 (1984). The first part of the Strickland test requires a showing that trial counsel made errors so serious that counsel was not functioning as guaranteed the defendant by U.S. Const. amend. VI. Heath v. Vose, 747 A.2d 475, 479 (R.I. 2000). The second part of the Strickland test requires the defendant to show that the deficient performance of trial counsel prejudiced the defense. Id. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial. Id. The Indiana Court of Appeals found that duplicity is not waived when it is part of the petitioner's claim for post conviction relief based on ineffective assistance of counsel. See Walker v. State of Indiana, 769 N.E. 2d 1162, 1167 (Ind. Ct. App. 2002) (court acknowledged that although the failure to object constituted a waiver, the Defendant had not, in fact, waived the issue because it was part of his ineffective assistance of counsel claim).

The State argues that the defense waived the right to raise a duplicity issue because the trial counsel never filed a 12(b)(2) motion. However, when a petitioner's claim of ineffective assistance of counsel is based on the failure of trial counsel to raise an issue or objection, the claim of duplicity is not waived. See Id. The proper way to attack a

duplicitous complaint, indictment or information is by motion pursuant to Super. R. Crim. P. 12(b)(2). State v. LaPlante, 409 A.2d 130 (R.I. 1979). Rule 12(b)(2) states that "...all other defenses and objections based on the defects in the institution of the prosecution or in the indictment...may be raised only by motion before trial...failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief of the waiver." Super. R. Crim. P. 12(b)(2). (Emphasis added)

Here, the defense counsel, prior to trial, took the first step in challenging the duplicitous indictment by filing a motion for a Bill of Particulars. Despite the motion, the State's response essentially gave the same dates set forth in the indictment and did not clear up the duplicity within the indictment. After the first mistrial, the defense counsel renewed his motion for a Bill of Particulars and received the same response. The defendant moved for JOA at the end of the State's case. The motion for JOA was renewed and denied after the defendant's case. The trial counsel never filed a motion to dismiss based upon the grounds of duplicity. Applying the Strickland test, the trial counsel's failure to file a motion rendered his assistance ineffective. The trial counsel's failure to raise the motion to dismiss based on the duplicitous nature of the indictment was a serious error which rendered trial counsel's performance deficient. See, Heath, 747 A.2d at 479. Applying the second part of the Strickland test, the trial counsel's deficient performance ultimately prejudiced the defense. See Id. Were it not for trial counsel's failure to raise the duplicity claim and file a 12(b)(2) motion, the Petitioner would have preserved the duplicity claim on appeal. Because of trial counsel's deficient performance, the Petitioner was denied basic constitutional rights given to every criminal defendant. As a result, the Petitioner's claim of duplicity in the indictment survives for

post conviction relief because the failure to preserve the issue is a basis for the Petitioner's claim of ineffective assistance of counsel.

Therefore, Petitioner has a valid claim of ineffective assistance of counsel which is supported by trial counsel's failure to preserve the issue of duplicity on appeal.

## II. THIS COURT SHOULD UPHOLD THE SUPERIOR COURT'S DECISION GRANTING PETITIONER'S POST-CONVICTION RELIEF APPLICATION WITH REGARDS TO COUNTS 3, 4, AND 5 OF THE INDICTMENT BECAUSE A PORTION OF THE INSTRUCTION GIVEN TO THE JURY IMPROPERLY REMOVED THE ELEMENT OF FORCE AND COERCION AND DENIED THE PETITIONER HIS DUE PROCESS RIGHTS OF FUNDAMENTAL FAIRNESS WHICH REQUIRES EACH ELEMENT OF A CRIME BE PROVEN BEYOND A REASONABLE DOUBT

On appeal, the standard of review is de novo because the issue is a question of fact concerning whether a defendant's constitutional rights have been infringed. Thomas, 794 A.2d at 993.

Counts 3, 4 and 5 of the indictment charged Petitioner with two counts of first degree sexual assault in violation of R.I.G.L. Sections 11-37-2 and 11-37-3, and one count of second degree sexual assault in violation of R.I.G.L. Sections 11-37-4 and 11-37-5. At trial, Judge Bourcier read verbatim the jury instruction in State v. St. Amant, 536 A.2d 897, 900 (R.I. 1988). The jury instruction read:

> "There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult...without the use of physical force or violence or the explicit threat of physical force or violence." (Emphasis added)

Id. Although the jury instruction eliminated the elements of force and coercion, Justice Bourcier's charge to the jury was the law in Rhode Island at the time of Petitioner's trial.

"The Rhode Island Supreme Court revisited the issue of force-and-coercion instructions regarding sexual assault cases and concluded that an instruction that, in effect, begins and ends with St. Amant language is legally defective because it takes a key element away from the jury." Pierce v. Wall, No. 00-5482, 2005 R.I. Super. LEXIS 3, at *3. In State v. Saluter, 715 A.2d 1250 (R.I. 1998), the Supreme Court invalidated jury instructions read by the trial justice quoting directly the St. Amant instructions holding, "The trial justice's instruction…effectively served to circumvent the State's required burden of proof on the element of force and coercion required by sections 11-37-2 and 11-37-3…thus, the instruction rendered nugatory the jury's ability to accept or reject the inference of force and coercion. Therefore, we hold that the instruction was error." Id. at 1259.[3]

In this case, it is **undisputed** that Justice Bourcier's charge at the trial negated the essential elements of the crimes charged by the prosecution. That is, the charge by Justice Bourcier eliminated the elements of force and coercion, which are explicitly contained within the sexual assault statute. Under Justice Bourcier's charge to the jury, the person in the position of step-parent or person in a relationship similar to a step-parent, or other relative, could be convicted of a crime under the statute without the use of actual force and coercion. The Court in Saluter held that such a jury instruction was legally defective, invalidating the St. Amant instruction requiring that the prosecution prove force or coercion as an essential element of the crime. See Id; See also, In Re Winship, 397 U.S. 358 (1970) (Each element of a crime must be proven beyond a

[3] Supreme Court Justice Bourcier concurred in this decision.

reasonable doubt.) The Superior Court has already held that "the instruction given at Petitioner's trial on force and coercion was flawed and denied his due process right that the State must prove each element of a criminal offense beyond a reasonable doubt." Wall, 2005 R.I. Super. LEXIS 3, at *5. There was **no evidence of force and coercion** at all during Petitioner's trial nor could there have been evidence of force or coercion during the trial as the discovery package given by the prosecution to Defendant's counsel included statements by the person identified by the alleged victim indicating that **no force or coercion was used**. Under Justice Bourcier's jury instruction, Petitioner had to be convicted if the alleged victim was believed. Under the jury instructions required by Saluter, **Petitioner could not be convicted.**

Proof of a criminal charge beyond a reasonable doubt is constitutionally required. In Re Winship, 397 U.S. at 362. The prosecution always has the burden of proof and must establish that the defendant is guilty beyond a reasonable doubt of every element of a criminal offense. Sullivan v. Louisiana, 500 U.S. 275 (1993). In Petitioner's trial, the prosecution did not prove the element of force. By circumventing the elements of the crime established by the statute, the charge to the jury given by Justice Bourcier in effect directed a verdict against the Defendant which is never constitutionally permissible. The Superior Court made it clear that "in the jurisprudence of the United States Supreme Court, the failure of a trial justice- whether acting inadvertently or with benign intent- to allow the jury to evaluate all elements of the crimes charged can never be harmless error." Wall, 2005 R.I. Super. LEXIS 3, at *11. The Court's decision to set aside Petitioner's convictions on Counts 3, 4 and 5 must be affirmed.

The State argues below that at the time the Rhode Island Supreme Court decided Saluter, Petitioner's trial was already final, and case law did not support the retroactive

application of Saluter. This argument has already been dismissed by the Superior Court in Wall. Id. at *10. The Court relied on the United States Supreme Court decision in Sandstrom v. Montana, 442 U.S. 510 (1979), which held that "jurors must be carefully instructed on what to do with presumptions so that the burden of persuasion will not be shifted from the State to the defendant." Although the Rhode Island Supreme Court did not reference Sandstrom v. Montana in its Saluter decision, the Court reached the same conclusion when it held that the so-called St. Amant instruction, employed by the trial judges in Saluter's case and also that of Petitioner, improperly withdrew from the jury consideration of an element of the crimes charged. Wall, 2005 R.I. Super. LEXIS 3, at *10. Therefore, even if the Rhode Island Supreme Court had decided Saluter after Petitioner's trial was final, Petitioner would still prevail in light of the controlling United States Supreme Court precedent.

The State also argues that the Petitioner did not interpose a proper objection to the jury instruction during trial constituting a waiver. The Superior Court addressed this issue in Wall and held that Petitioner was not precluded from raising the issue of improper jury instructions on appeal. See Id. Precluding the Petitioner of raising this issue would deny him his right of **fundamental fairness** protected by the U.S. and R.I. Constitution. In State v. McGehearty, 394 A.2d 1348, 1352 (R.I. 1978), the Rhode Island Supreme Court formulated a test to determine whether the failure to comply with a procedural requirement, such as failing to properly object at trial or to raise an issue on appeal, precludes later appellate review. The McGehearty test requires the Court to examine the record to ensure that the failure to comply with the procedural requirement was not a "deliberate bypass," or that it did not constitute "sandbagging." Id. Also, the

test requires the Court to scrutinize the record to determine if the "breach complained of will constitute something more than harmless error." Id.

The Superior Court correctly held that Petitioner satisfied all of the requirements of the McGehearty test and therefore the issue of submitting improper jury instructions was not waived. Defense counsel was not trying to "sandbag" the prosecution or bypass established procedures by not objecting to the improper jury instructions at trial. At the time of the trial, the Court relied on St. Amant because Saluter had not yet been decided. Trial counsel could not predict that the Rhode Island Supreme Court would overrule St. Amant. Also, the Superior Court has already determined that the "failure of the jury to be given the element of force and coercion as one for them to resolve is clearly more than a harmless error." Wall, 2005 R.I. Super. LEXIS 3, at *13.

Additionally, the State argues that Saluter is not a new rule of law and therefore it should not be applied retroactively. The Superior Court, relying on Pailin v. Vose, 603 A.2d 738 (R.I. 1992), addressed the State's argument and determined that Saluter did create a new rule of law. See Wall, 2005 R.I. Super. LEXIS 3, at * 9. In Pailin, the Court defined a new rule of law as "one that breaks new ground or imposes a new obligation on the States or Federal Government or that is not dictated by precedent existing at the time the defendant's conviction became final. Pailin, 603 A.2d at 741.

Although the Court in Wall held that "Saluter did not break any new ground or impose any new obligation on the State because it has always been the government's obligation to prove each element of a crime beyond a reasonable doubt," the Court held that "Saluter surely announced a new rule of law that improved the fact-finding procedures at trial." The Court recognized that the U.S. and R.I. Constitution protection of fundamental fairness required this change. The Court ruled that "Saluter altered our

understanding of the bedrock procedural element's essential to the fairness of a proceeding." Wall, 2005 R.I. Super. LEXIS 3, at * 14. "Saluter, unlike St. Amant or any other case that had preceded it, announced a watershed rule necessary to the **fundamental fairness** of a criminal proceeding involving sexual assault, namely, that instructions which remove the element of force and coercion from the jury's deliberations are constitutionally impermissible and render void guilty verdicts resulting in such circumstances." Id. (emphasis added). Therefore, the State's position that Saluter did not create a new rule of law is not persuasive and the Superior Court properly dismissed the State's argument.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court reverse John Pierce's convictions regarding Counts 1 and 7 based on grounds of duplicity and uphold the judgment granting the post-conviction relief application regarding John Pierce's convictions on Counts 3, 4 and 5, and order such other relief as the Court may deem just and proper.

Respectfully Submitted,

Dated: August 21, 2007

**JOHN F. PIERCE**

By His Attorneys,

Richard K Corley

Richard Corley (#2965)
Corley Taveras, LLP
127 Dorrance Street, 2nd Floor
Providence, RI 02903
401-861-2100 Tel.
401-861-2139 Fax.
rkcorley@ctpllp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21 day of August 2007, I placed a copy of the within document in the U.S. mail, postage prepaid, to:

Aaron L. Weisman, Esq.
Department of Attorney General
150 South Main Street,
Providence, Rhode Island 02903

Richard K Corley